IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMETRIUS D. MOORE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DCFS CHILD AND FAMILY SERVICES,<br>MIA GULLEY,<br>DAVID BONE, UNKNOWN PARTY 1,<br>UNKNOWN PARTY 2, AMANDA<br>JANSEN, UNKNOWN PARTY 3,<br>UNKNOWN PARTY 4, and<br>MICHAEL BOYD,<br><br>　　　　Defendants. | Case No. 3:24-CV-01697-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

　　Plaintiff Demetrius D. Moore, proceeding *pro se*, filed this action alleging that the Illinois Department of Children and Family Services ("DCFS") and others violated his right to privacy as protected by the Fourth Amendment and his due process and equal protection rights under the Fifth and Fourteenth Amendments. (Doc. 3). Moore also makes various state law claims under the Illinois Parentage Act of 2015, 750 ILCS 46/101 *et seq.*, and the Illinois Constitution's privacy clause, along with claims pertaining to his right to be free from infliction of unnecessary harm and DCFS's failure to conform to its own customs, policies, and practices. (*Id.*).

　　This matter is now before the Court on Moore's Motion for Leave to Proceed *in forma pauperis* ("IFP"). (Doc. 4). Normally, the fee for filing a complaint and opening a civil case is $405.00. Under 28 U.S.C. § 1915(a)(1), however, an indigent party may commence a federal

court action without paying required costs and fees by submitting an affidavit asserting their inability to pay the fees, the nature of the action, and the affiant's belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Destitution is not required to proceed without prepaying fees or costs; an affidavit demonstrating that the plaintiff cannot, because of his poverty, provide himself with the necessities of life is sufficient. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).

Here, the Court is satisfied from Moore's affidavit that he is indigent. Moore asserts that he is unemployed, is currently in jail, and has no monthly wages or other source of income. (Doc. 4). In terms of assets, Moore attests to having no savings, cars, real estate, or other property. (*Id.*). Moore lists no dependents, debts, or other financial obligations. (*Id.*). Based on the provided financial information, the Court finds that Moore is indigent under 28 U.S.C. § 1915(a)(1), and thus, grants his Motion for Leave to Proceed IFP. (Doc. 4).

Because Moore has been permitted to proceed without prepayment of the filing fee, the Court must now screen Moore's Complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismiss the complaint if it is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense."). Thus, the next step is to examine the allegations in the Complaint.

## LEGAL STANDARD

The undersigned is mindful that courts construe *pro se* claims generously. *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). Under Federal Rule of Civil Procedure 8(a), a complaint must include: (1) a short and plain statement of the grounds for the court's

jurisdiction; (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought. FED. R. CIV. P. 8(a). The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649, 651 (7th Cir. 2013). Conclusory statements and labels, however, are not enough. The complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422-23 (7th Cir. 2013). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Instead, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

## THE COMPLAINT

In his 64-page Complaint, Moore narrates a troubling and complicated history regarding the guardianship of his newborn son and his relationship with his son's mother, Cierra Whitley. First, his son was born in February 2023 and tested positive for cocaine at birth, which required an additional week's stay at the hospital. (Doc. 3, pp. 9-10). After the birth, Moore and Whitley signed a voluntary acknowledgement of paternity ("VAP") indicating that Moore was the biological father, without any genetic testing. (*Id.*). Whitley abandoned the baby and left the hospital after two days. (*Id.*). Before his son was released, a DCFS caseworker investigated Moore's home. (*Id.* at p. 11). A hearing was held in St. Clair County Circuit Court regarding custody, and Moore's son was discharged from the hospital and released to him. (*Id.* at pp. 13-14). At his request, Moore's close friend provided both care and a home to Moore's son, because Moore lacked the capacity to tend to a newborn by

himself. (*Id.* at p. 17). Shortly after the baby was released from the hospital, a new DCFS caseworker, Defendant Mia Gully, began working Moore's case. (*Id.* at pp. 15-23). Moore makes many allegations against Gully as to her lack of professionalism, inappropriate conduct, retaliation, lack of boundaries, falsification of records, and practice of breaking confidentiality and DCFS rules that played out over the following months. (*Id.* at pp. 15-23, 40-53, 57-58).

Around the time of his son's birth, Moore sought custody of his teenage cousin whose mother recently passed away. (*Id.* at pp. 11-13). His teenage cousin also stayed with his close friend at that time. (*Id.* at p. 12). According to the Complaint, Whitley also asked Moore to care for her older son ("A.Q.") who had no biological relation to Moore. (*Id.* at p. 18). At Whitley's request, Moore temporarily took in A.Q. in April 2023. (*Id.* at p. 24). A.Q. seemed to do well at first, but after school let out in May 2023, he began to cause issues in the home. (*Id.* at pp. 24-43). Moore detailed many concerning incidents with A.Q., which escalated in June 2023 after Moore assumed full custody of A.Q. (*Id.* at pp. 32-34). For example, A.Q. ran away for two days, so Moore took his phone and discovered disturbing images of A.Q. posing with guns. (*Id.* at pp. 35-36). A.Q. became increasingly angry with Moore, and tension grew between Whitley and Moore too. (*Id.* at pp. 36-39).

Eventually, on June 21, 2023, A.Q. reported to DCFS that Moore sexually abused him. (*Id.* at pp. 39-46). Moore avers that Whitley and A.Q. conspired to concoct this story in an attempt to deprive Moore of the custody of his newborn son. (*Id.* at pp. 39-41). The allegations were initially investigated by DCFS investigator Defendant Michael Boyd, and later by Defendant Amanda Jansen. (*Id.* at pp. 40-46, 52-53). A.Q. also spoke with State of Illinois and East St. Louis police officers regarding his allegations. (*Id.* at p. 43). A neglect hearing was

held sometime in summer 2023. (*Id.* at pp. 45-46). In August 2023, Whitley and A.Q. apparently shot up Moore's home and, on the same evening, the pair proceeded to commit two murders for which they were later arrested. (*Id.* at pp. 48-50, 58).

Eventually, in October 2023, Moore was arrested on a probation violation and then charged with 12 counts of sexual assault related to A.Q.'s allegations (*Id.* at pp. 52-53). Moore expresses dissatisfaction with the investigation by DCFS investigators, Boyd and Jansen, into these allegations because he claims that the investigators declined to question his suggested witnesses, and they closed the investigation without a fair, truthful, or thorough process. (*Id.* at pp. 40-43, 52-53). While in jail in May 2024, Moore attended a video conference with two unknown DCFS caseworkers who advised him that a paternity test had been conducted on his infant son, and he was not the biological father. (*Id.* at pp. 53-54). Despite being told of a hearing later that month regarding his son's paternity, Moore was never brought to court, and his attorney, Defendant David Bone, refused to visit Moore to inform him of what was going on in that matter. (*Id.* at pp. 54-55).

The Complaint includes seven counts for relief and seeks compensatory damages. (*Id.* at pp. 59-63). Moore accuses Defendant DCFS, the Circuit Court of St. Clair County, and his attorney in the custody matter, Defendant Bone, with failing to provide notice of the proceeding and an opportunity to be heard, failing to provide notice of a paternity test, and failing to lawfully obtain a DNA sample from him or his infant son for testing in violation of the Illinois Parentage Act, 750 ILCS 46/101 *et seq.*, and the Illinois Constitution's privacy clause. (*Id.* at pp. 53-57, 59-61). As to Defendant Gully, Moore asserts that she violated his right to be free from infliction of unnecessary harm by failing to report information to police that caused his house to be shot up and caused him to be chased at gunpoint by another

person. (*Id.* at p. 61). Moreover, Moore alleges that Gully violated his right to privacy under the Fourth Amendment in her role as a DCFS caseworker by inappropriately disclosing information about his case to others, including A.Q. and his family. (*Id.* at pp. 62-63). Moore also brings due process and equal protection claims against both child protective investigators, Defendants Boyd and Jansen, for failure to investigate the case successfully, failure to question his suggested witnesses, and ultimately causing his house to be shot up and a false report to be entered against him. (*Id.* at p. 62). Lastly, Moore asserts a claim against DCFS for their policies and practices and to hold them accountable for the conduct of their employees. (*Id.* at p. 63).

## DISCUSSION

After careful review of the Complaint, the Court does not find a basis for a federal cause of action. While Moore alludes to several of his constitutional rights—privacy, due process, and equal protection—his allegations do not substantiate an actionable deprivation of any of these rights. Without any federal claim, even if Moore states a claim under state-law, the Court has no basis to exercise supplemental jurisdiction over those claims, as explained further below.

First, as to the claims against DCFS, it is well-settled that "Congress, in passing [42 U.S.C.] § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). And "a state agency *is* the state for purposes of the eleventh amendment." *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). DCFS is a state agency and is subject to the sovereign immunity afforded in the

Eleventh Amendment.[1] *See Brunken v. Lance,* 807 F.2d 1325, 1330 (7th Cir. 1986); *see also Woods v. Ill. Dep't of Children and Family Servs.*, 710 F.3d 762, 764 (7th Cir. 2013). Illinois has not waived its sovereign immunity with respect to § 1983 claims in federal court. *See Ryan v. Ill. Dep't of Children and Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999); *see also Sittig v. Ill. Dep't of Corr.*, 617 F. Supp. 1043, 1044 (N.D. Ill. 1985). As such, DCFS may not be sued in federal court under § 1983. *See Ryan*, 185 F.3d at 758. Moore's claims against DCFS are dismissed with prejudice due to sovereign immunity.[2]

Moore's next constitutional claim alleges a violation of his right to privacy at the hands of Defendant Gully. Moore's description of Gully's behavior certainly paints a picture of rampant unprofessionalism, personal conflict, and possibly even repeated violation of DCFS's own policies. He also lists many broad and vague assertions that Gully told him everything going on in A.Q.'s aunt's home, Gully told A.Q.'s family everything Moore told her, Gully started to share information with A.Q.'s family about Moore's DCFS investigation, and Gully went back and forth with Moore's and Whitley's families about the investigations. To be sure, the DCFS investigation involved Moore, Whitley, and her son A.Q., so disclosure of certain information to each of those parties may well have been appropriate. But more importantly, Moore's Complaint lacks any facts that allow this Court to determine whether he had a constitutionally protected privacy interest in the allegedly disclosed information.

---

[1] Notably, Moore only seeks compensatory and punitive damages. He also does not allege any ongoing constitutional violation or name the director of DCFS in an official capacity for purposes of prospective equitable relief, which could possibly avoid the sovereign immunity bar. *See, e.g., Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005).

[2] While Moore does not name the St. Clair County Circuit Court in his Complaint as a defendant, he lists the circuit court in some of his factual narrative and enumerated counts. To be clear, Illinois state courts are also a part of the State of Illinois and are subject to sovereign immunity as well. *Wemple v. All Illinois Judicial Circuits*, 778 F. Supp. 2d 930, 933 (C.D. Ill. 2011). Thus, any claims against the circuit court are also dismissed with prejudice.

From the lack of specific facts, the Court also cannot ascertain whether Gully's conduct amounted to a violation of that potential interest. Moore does specifically state that Gully told Whitley's cousin, who was Moore's tenant and Gully's friend, that Moore planned to evict him, which caused him to chase Moore down in a truck with a gun. As the facts are presented, this information does not relate to Gully's position as a caseworker, does not appear to have been shared under color of state law, concerns mutual personal relationships outside of DCFS, and involves information about the potential eviction of a tenant. Thus, the Court has no basis to deem this information subject to constitutional privacy protections.

Turning to the due process and equal protection[3] claims against Defendants Boyd and Jansen, Moore accuses each child protective investigator of failure to investigate the case successfully and failure to question any and all of his witnesses causing a false report to be entered against him. Procedural due process requires a two-fold inquiry: (1) whether the plaintiff was deprived of a protected interest and (2) what process is due. *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Typically, procedural due process involves notice and an opportunity to be heard. *Id.* Substantive due process protects against only the most egregious and outrageous government action where the government violated a fundamental right or liberty in an arbitrary or irrational manner. *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019).

As described in the Complaint, A.Q., a child in Moore's care, reported sexual abuse to DCFS. Moore's other children were removed from his home and a safety plan was set in place, then Moore received a neglect hearing. (Doc. 3, pp. 43-46). This hearing demonstrates

---

[3] Aside from using the words "equal protection," the Complaint contains no information to indicate any equal protection violation (i.e., that Moore was treated differently based on his membership in a protected class or from others similarly situated to him).

some measure of process providing notice and an opportunity to be heard. Moore does not claim a total lack of due process, but that Boyd and Jansen's investigations violated his due process rights.

Defendant Boyd conducted the initial investigation in response to A.Q.'s report. Moore alleges that Boyd spoke with him and A.Q.'s grandma, lied at the neglect hearing, and generally expressed disdain for Moore. As to Defendant Jansen, Moore simply alleges that she visited him in jail after his arrest asking for witness information. The Complaint continues with conclusory statements that Jansen failed to interview his identified witnesses, denied him a fair investigation in a suspected child abuse and neglect investigation, unlawfully discriminated against him as a perpetrator of child abuse and neglect, and closed the investigation without a full and fair investigation taken only from A.Q.'s word. Clearly, Moore does not provide enough (or any) specific facts of the conduct by Boyd or Jansen that amounts to a violation of his constitutional rights. Nor do his due process rights, as Moore contends, dictate that investigators must question every witness he identifies.

Furthermore, the attachment to his Complaint contains a letter from DCFS dated September 6, 2023, indicating that the initial investigation resulted in a favorable outcome for him. (Doc. 3-1, pp. 28-29). After investigation, DCFS categorized the report of abuse from June 21, 2023, as "unfounded" finding no credible evidence of child abuse or neglect. (*Id.*). It is hard to reconcile Moore's claims of an incomplete and unfair investigation, when that investigation resolved favorably for him. Of course, A.Q. also spoke to the police. Eventually, in October 2023, charges were brought against Moore for sexual abuse which led to his arrest, but the Complaint does not allege that Boyd or Jansen had anything to do with that investigation.

Moore also asserts a due process claim and an ineffective assistance of counsel claim for the DNA testing of his infant son and the related underlying state court proceedings. As an initial matter, this Court lacks jurisdiction to review state-court decisions, including those involving the termination of parental rights, under the *Rooker-Feldman* doctrine. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 396 (7th Cir. 2023). This doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 399 (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). As the Seventh Circuit recently explained, while "the natural temptation for losing parties to keep fighting and to look for new forums" is understandable, "it is well established that federal district and circuit courts do not have jurisdiction to review such state court decisions." *Id.* at 396. "The doctrine is limited to federal claims that 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Id.* at 399 (quoting *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021)). To determine whether a plaintiff's federal claims are inextricably intertwined with the state court judgment, a district court must ask whether the plaintiff is alleging an injury caused by the state court judgment. *Id.*

Moore does not explicitly assert that his custody rights over his infant son were terminated. He only alleges that genetic testing was performed without his consent, and, while incarcerated, he was informed that the child was not his biological son. From the Complaint, the aftermath of that DNA test and the state court outcome are mysteries. But Moore does indicate that the DNA test was done pursuant to a court order from a case involving A.Q. (Doc. 3, pp. 56-57). To the extent that Moore is challenging that order or the outcome of the state-court proceeding related to his paternity or custody rights of his infant

son, the Court cannot review either.

As to his due process claim, it is true that the Due Process Clause protects, "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Again, the Complaint does not indicate whether the DNA testing of the child led to a termination of his custody rights. Additionally, the Complaint indicates that the testing was court-ordered and alludes to the fact that both Moore and his son's mother, Whitley, were incarcerated at the time of the alleged DNA test, so it is unclear who had custody of his son at the time. The only facts provided are that two unknown caseworkers told him about the DNA test, they mentioned the child was not biologically his, and they suggested it would be best to give up his right to his son so "DCFS could go away." (Doc. 3, p. 54). Moore asserts that some kind of hearing occurred on May 31, 2024, and he was not brought to that hearing. But he does not mention what that hearing was meant to entail or its outcome. Based on the facts alleged in the Complaint, the Court cannot discern a claim for a constitutional due process violation connected to the alleged DNA test or related proceeding.

Moore also attempts to raise an ineffective assistance of counsel claim as to the DNA testing and underlying state-court proceedings. First, there is no constitutional guarantee to effective assistance of counsel in a civil case. *Conway v. Henze*, 14 F. App'x 645, 651 (7th Cir. 2001). Second, pursuant to § 1983, a plaintiff may bring an action for money damages against a defendant who has deprived her of a federal constitutional right, if the defendant was acting under color of state law. 42 U.S.C. § 1983. But "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981); *see also Bartole v. Hughes*, No. 2:22-CV-

257, 2022 WL 10542267, at *3 (N.D. Ind. Oct. 18, 2022) ("Private defense attorneys—even appointed public defenders who are paid by the state—are not considered state actors under § 1983."). Perhaps with additional information, Moore could assert a malpractice claim against his attorney in state court, but he cannot raise these claims under § 1983.

Lastly, Moore raises several claims rooted in state law, such as Count 1 for violation of the Illinois Parentage Act, 750 ILCS 46/101 *et seq.*, Count 3 for violation of the Illinois Constitution's privacy clause due to the paternity testing being performed outside of established chain-of-custody guidelines, and Count 4 for violation of his right to be free from infliction of unnecessary harm. As discussed above, there is no viable federal claim that would support the Court's jurisdiction under 28 U.S.C. § 1331. And the Complaint does not contain any allegations that would support diversity jurisdiction under 28 U.S.C. § 1332. The Court will not address the merits of the state-law claims, because even if the allegations properly stated any claim, the Court has no original jurisdiction and thus has no basis to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

## Conclusion

For these reasons, the Court **GRANTS** Moore's Motion for Leave to Proceed *in forma pauperis* (Doc. 4) but **DISMISSES** the Complaint (Doc. 3) for failure to state a claim and lack of subject matter jurisdiction. Furthermore, Moore's Motion for Status (Doc. 14) is **DENIED as moot** as this Order resolves the status of this case.

Moore will be given an opportunity to amend his Complaint. The Court encourages Moore to review the Court's resources for *pro se* litigants, which can be found at: https://www.ilsd.uscourts.gov/representing-yourself-pro-se-litigant. In particular, the

Court encourages Moore to review the American Bar Association's Handbook for Pro Se Litigants, which explains how to draft a complaint in federal court.

If Moore chooses to amend his Complaint, he shall do so on or before **July 14, 2025**. Failure to do so will result in the dismissal of this action.

**IT IS SO ORDERED.**

**DATED:**   June 12, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**